IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SYLVESTER LEWIS BROWN,
    Plaintiff,

v.        Case No: 3:09cv88/WS/CJK

B. A. KENT, et al.,
    Defendants.

## REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is before the court upon the parties' cross-motions for summary judgment. (Docs. 61, 68). Upon review of the motions, responses, summary judgment evidence and relevant legal authorities, the undersigned recommends that plaintiff's motion (Doc. 61) be denied and defendants' motion (doc. 68) be granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

This civil rights case involves First Amendment retaliation claims. Plaintiff, proceeding *pro se*, is an inmate of the Florida penal system currently confined at Calhoun Correctional Institution Annex. He was confined at Century Correctional Institution ("Century CI") at the time of the events giving rise to his complaint. Plaintiff's second amended complaint names two defendants, each sued in his individual capacity: B.A. Kent and G.A. Scarbrough. (Doc. 21). Defendant Kent was a Correctional Officer Sergeant at Century CI at the time of the alleged unconstitutional conduct, and defendant Scarbrough was a Correctional Officer at Century CI. (*Id.*, p. 2; Doc .68, p. 1). Plaintiff alleges that in retaliation for his filing a lawsuit against defendant Kent, Kent threatened him on more than one occasion,

and dumped his legal work in a big pile during a property inventory. Plaintiff alleges defendant Scarbrough retaliated against him for filing the lawsuit against Kent by issuing plaintiff an "unwarranted" disciplinary report ("DR"). (Doc. 21, p. 6).[1] As relief, plaintiff seeks a declaratory judgment that the defendants violated his First Amendment rights, nominal damages in the amount of $1.00 from each defendant, and reimbursement for all costs and fees incurred in this action. (*Id.*, p. 12).

On December 1, 2010, plaintiff filed a motion for summary judgment (doc. 61), supporting memorandum (doc. 62) and statement of undisputed material facts (doc. 63), to which defendants responded (*see* doc. 70). On January 28, 2011, defendants filed a joint motion for summary judgment (doc. 68) and statement of undisputed material facts (doc. 69), to which plaintiff responded (doc. 73).

## LEGAL STANDARDS

Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510,

---

[1]Although plaintiff states in his complaint that he also believes Kent and Scarbrough may have dumped cigarette butts and ashes on his bedding during a cell search on November 11, 2008, plaintiff does not assert a retaliation claim based on that conduct. (Doc. 21, pp. 6-7 and continuation pages; *see also* doc. 73, p. 6 (clarifying, in plaintiff's response to defendants' motion for summary judgment, that: "Plaintiff did not raise a claim of retaliation by the Defendants in searching his cell and ransacking it by dumping cigarettes, butts, and ashes on Plaintiff's sheets and pillow, and will not address the Defendant's argument related to the cell search.")). Accordingly, the cell search and "ransacking" incident will not be discussed.

91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S. Ct. at 2510. The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). In resolving a summary judgment motion, the court "reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party." *Owens v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

The Rule 56 standard is not affected by the filing of cross-motions for summary judgment. The court must evaluate each individual motion on its own merits, viewing the evidence in favor of the nonmoving party in each instance. *Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 443 F. Supp. 2d 1284, 1293-94 (N.D. Ala. 2006); *see also Shaw v. Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) ("Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."); 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed.1998) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.").

Qualified Immunity Standard

Defendants seek summary judgment on the basis of qualified immunity, arguing that plaintiff's allegations do not establish a constitutional violation. (Doc. 68, pp. 20-21). The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information the official possessed at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L .Ed. 2d 666 (2002); *Conn v. Gabbert,* 526 U.S. 286, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Qualified immunity ensures that individuals can reasonably anticipate when their conduct may give rise to liability. Therefore, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

Requisite to showing entitlement to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

Courts apply a two-pronged test when evaluating a claim of qualified

immunity: (1) whether, on the facts alleged, a constitutional right was violated; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The court may exercise its discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). The court may grant qualified immunity if the plaintiff fails to carry his burden on either of the two prongs. *See, e.g., Pearson*, 129 S. Ct. at 822-23 (evaluating only *Saucier*'s second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

First Amendment Standard

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). In the prison context, First Amendment retaliation claims are analyzed under the three-part test set forth in *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). To prevail on a retaliation claim, the inmate must establish: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech." *Id.* at 1276. Because the core of a First Amendment retaliation claim is that the prisoner is being retaliated against for exercising his right to free speech, the prisoner is not required to allege the violation of an additional separate and distinct constitutional right. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011); *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir.

1989) ("To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech.").

## RETALIATION CLAIMS AGAINST DEFENDANT KENT

### Threatening Statements and Gestures

There is no dispute that in July or August of 2008, plaintiff filed a lawsuit in state court against defendant Kent. (Doc. 63, p. 1 ¶; Doc. 69, p. 2 ¶ 5). Sometime between then and November of 2008 (when the alleged retaliatory acts began), defendant Kent became aware of that lawsuit. (Doc. 62, Ex. A, Kent Answer to Req. for Admis. 6). Plaintiff alleges that on numerous occasions defendant Kent harassed plaintiff and made several threats to do physical harm to plaintiff because of the lawsuit. (Doc. 61, Brown Decl. ¶ 3). Plaintiff details three such incidents: (1) on November 4, 2008, defendant Kent "scold[ed]" plaintiff about the pending lawsuit; (2) on November 9, 2008, defendant Kent stopped by plaintiff's cell and stated, "Brown, you may not live to see your lawsuit against me, who knows, your ass just may get beat to death"; and (3) on November 10, 2008, Kent paused at plaintiff's cell door and made a hand gesture by placing his finger across his neck and sliding it across while looking directly at plaintiff. (Doc. 21, pp. 5-6, ¶¶ 8, 9, 11). Defendant Kent disputes these facts and states that he "never made threatening statements or gestures toward inmate Brown in retaliation for the previous state tort claim." (Doc. 69, Ex. F, Kent Decl. ¶ 3).

Plaintiff is not entitled to summary judgment on his claim of retaliatory threats. Plaintiff concedes there is a genuine dispute as to whether Kent made the threatening gesture and statements. (Doc. 73, p. 2). Even absent this concession, the evidentiary

material submitted by defendant Kent raises genuine issues for trial on whether Kent made the alleged threats. Viewing the evidence in the light most favorable to defendant Kent, a reasonable jury could conclude that Kent did not violate plaintiff's First Amendment rights. Therefore, plaintiff's motion for summary judgment must be denied.

The same reasoning applies to defendant Kent's motion for summary judgment. The parties hotly dispute whether defendant Kent made the alleged retaliatory threats. Defendant Kent argues that even if the Court accepts plaintiff's version of the facts as true, Kent is entitled to judgment as a matter of law, because "at best all [plaintiff] would have established are some empty threats. Such claims of verbal threats are insufficient to state a claim for relief." (Doc. 68, p. 12) (citations omitted). However, the cases cited by defendant Kent merely stand for the proposition that allegations that an inmate was subjected to verbal abuse and threats by prison officers do not state claim for an Eighth Amendment violation. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008), *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983), *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2nd Cir. 1973). As stated previously, the law in this Circuit is that plaintiff need not show that defendant Kent's alleged threats also violated the Eighth Amendment's prohibition against cruel and unusual punishment. *O'Bryant*, 637 F.3d at 1212; *Farrow*, 320 F.3d at 1248; *see also, e.g., Pittman v. Tucker*, 213 F. App'x 867, 870 (11th Cir. 2007) (holding that prison captain's alleged statement to inmate to: "Learn to play the game or have a boot put in your ass," could be interpreted as a threat that prison officials would do "something drastic" if prisoner continued to file grievances and, thus, was actionable in First Amendment retaliation claim; "[A] reasonable jury could find that the threat,

if made, was sufficient to deter a person of ordinary firmness from filing additional grievances. Even though the threat was not made as part of a "prolonged campaign of harassment," the statement was likely to have a deterrent effect because Captain Svir held a position of significant authority and his job involved reviewing grievances. Further, "something drastic" could easily be interpreted by an inmate as a threat of physical violence, either directly or thru deliberate inattention."). Thus, accepting plaintiff's verison of the facts as true, which the Court must do in disposing of defendant Kent's motion for summary judgment, a reasonable jury could find a First Amendment violation. Because there are genuine disputes as to material facts and defendant Kent has not shown he is entitled to judgment as a matter of law, his motion for summary judgment on the issue of his alleged retaliatory threats must be denied.[2]

"Sabotaging" Plaintiff's Legal Property on November 30, 2008

Plaintiff's remaining claim against defendant Kent is that during Kent's inventory of plaintiff's property on November 30, 2008 in connection with plaintiff's placement in administrative confinement, Kent "sabotaged" plaintiff's legal property by dumping the contents of 8 or 9 manila envelopes into one big pile. (Doc. 21, p.

---

[2] Notably, defendant Kent's assertion of qualified immunity relies solely on plaintiff's alleged failure to establish a constitutional violation. (Doc. 68, p. 21). Kent's summary judgment motion argues only that there was no constitutional violation. (*Id.*). Kent does not contend that his conduct, if unconstitutional, did not violate clearly established law. (*Id.*). *Cf. Farrow*, 320 F.3d at 1249 n. 22 (11th Cir. 2003) (affirming denial of summary judgment and concluding, based solely on a discussion of *Saucier*'s first prong, that defendants were not entitled to qualified immunity; defendants argued only that there was no constitutional violation, but failed to contend that their conduct, if unconstitutional, did not violate clearly established law.). Even if Kent did make this argument, the law in this Circuit was clearly established in 2008 that a correctional officer could not retaliate against an inmate for the inmate's filing a lawsuit. *See* discussion *supra* of First Amendment Standard.

6 ¶ 18; Doc. 61, Brown Decl. ¶ 14; Doc. 63, ¶¶ 7, 8; Doc. 73, Ex. A).  Plaintiff states this was in retaliation for plaintiff's lawsuit against Kent.  (*Id*.).  Defendant Kent states under oath that even if he was the officer who inventoried plaintiff's property, he "handle[s] all inmates' property in accordance with Department rules and procedures, and "would not have 'sabotaged' inmate Brown's legal property as he alleges."  (Doc. 69, Ex. F, Kent Decl. ¶ 4).  Kent adds that if the manila envelopes containing Brown's legal work had metal tabs to keep the envelopes closed, the legal papers would have been removed and the envelopes retained in storage so that inmate Brown would not have access to metal, as inmates in confinement are not permitted to have metal items in their cells that could be sharpened into a weapon.  (*Id*.).  Plaintiff responds that only two of his legal envelopes contained metal binders, as evidenced by the property list indicating that Kent stored only two envelopes.  (Doc. 73, p. 5 and Ex. A).  Plaintiff asserts that the 8 or 9 remaining envelopes did not have metal binders, that he was allowed to keep those envelopes while in administrative confinement, and that there was no legitimate reason for dumping the papers from those envelopes into one big pile.  (Doc. 73, p. 5).

Although the parties dispute whether defendant Kent "sabotaged" plaintiff's legal property in the manner plaintiff alleges, that factual dispute is of no consequence.  To prevail on his retaliation claim, plaintiff must establish, as one of the three elements, that Kent's conduct would likely deter an inmate of ordinary firmness from filing a lawsuit.  *See Mosely*, 532 F.3d at 1276.  Whether the conduct "would likely deter" is judged by an objective standard.  *Mosely*, at 1277; *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005).  Here, removal of plaintiff's legal work from its envelopes is simply too *de minimis* of an issue to constitute a First

Amendment violation.  At best, the action of which plaintiff complains would be nothing more than a minor inconvenience for plaintiff, forcing him to re-organize his papers.  Plaintiff does not allege that any of his legal work was confiscated or destroyed during the inventory of his property, nor does he suggest that receiving his legal work in "one large pile" had any effect on his pursuit of any pending lawsuit(s). Because a reasonable jury could not conclude that Kent's alleged conduct would likely deter an ordinary inmate from filing or maintaining a lawsuit, plaintiff's motion for summary judgment must be denied and defendant Kent's granted.  *See Bennett* at 1252 ("[W]e recognize that government officials should not be liable when the plaintiff is unreasonably weak-willed or suffers only a *de minimis* inconvenience to her exercise of First Amendment rights.") (internal quotation omitted); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise. . . .").

## CLAIM AGAINST DEFENDANT SCARBROUGH

Plaintiff's only claim against defendant Scarbrough is that Scarbrough wrote plaintiff an "unwarranted" DR on November 30, 2008, in retaliation for plaintiff filing the lawsuit against defendant Kent.  The DR at issue is as follows:

> Inmate Brown, Sylvester DC#0073818 is being charged with a violation of F.A.C. Chapter 33-601.314, Rules of Prohibited Conduct, 6-1 Disobeying a Written Order.  On 11/30/2008, I, Officer Scarbrough was assigned as a housing officer in H-Dorm.  At approximately 9:55AM I was conducting a routine outside check of H-Dorm. I then observed Inmate Brown, Sylvester DC#073818 returning to the dorm from the recreation field.  Let it be noted that this inmate has a straw hat pass from medical that was effective 10/20/2008 until 10/20/2009.

> Inmate Brown was not wearing his straw hat in the sunlight. I consulted with SRN Ann Powell and she stated that anytime Inmate Brown leaves the dorm to go outside he is to wear a long sleeve shirt and a straw hat. Nurse Powell's witness statement will be attached to this D.R. The shift supervisor was notified and authorized this report. Inmate Brown was then placed in hand restraints and escorted to medical where he received a pre-confinement physical. Inmate Brown was then escorted to administrative confinement pending a disciplinary team hearing.

(Doc. 69, Ex. G). The parties do not dispute the following procedural history concerning the DR. Defendant Scarborough wrote the DR on November 30, 2008. (Doc. 69, Ex. G). Plaintiff was provided written notice of the charge on December 5, 2008. (*Id*.). An investigation was conducted. (*Id*.). The investigative report contains a copy of the relevant medical pass. The pass, issued on October 20, 2008, details several restrictions, including: "Inside Job × 1 yr – straw hat × 1 yr – long sleeves × 1 yr." (Doc. 69, Ex. D). The investigative report also contains witness statements from plaintiff, Nurse Powell, and Dr. Yu. (*Id*.). Plaintiff's statement states, essentially: (1) the DR was in retaliation for the lawsuit against Kent, (2) the purpose of the pass was to avoid exposure to "the high index of the ultraviolet sunrays," (3) the pass did not require plaintiff to wear his hat when the weather conditions were not warm or sunny, (4) the weather was cloudy, cool and windy with no sun on the day in question, (5) plaintiff had not worn his hat outside at other times of the day when it was not sunny and it was never an issue until plaintiff filed his lawsuit against Kent. (Ex. G, Brown Witness Statement). Dr. Yu's witness statement states: "[I]nmate is supposed to wear straw hat & long sleeves when outside all the time during daylight." (Ex. G, Yu Witness Statement). Nurse Powell's witness statement states: "Inmate Brown Sylvester #073818 had previous no sun exposure pass. It was discontinued 6/12/08 as per DOC Technical Instruction for medical. He

was issued straw hat pass – long shirt pass to take care of outside sun exposure. The pass was again reviewed 10/20/08 - 10/20/09. This is medical instructions. Inmate is to wear straw hat outside daylight hours." (Ex. G, Powell Witness Statement). A disciplinary panel hearing was held on December 9, 2008, in front of J. Thomas and S.E. McCluskey. (Ex. G). Plaintiff was present and offered staff assistance, but declined. (*Id*.). The panel found plaintiff guilty based on plaintiff's guilty plea, and sentenced him to 15 days' disciplinary confinement. (*Id*.).[3] Plaintiff did not appeal the disciplinary action.[4]

Plaintiff asserts that the purpose of the pass was to avoid "exposure of the high index of the sun rays," (doc. 61, Brown Decl. ¶ 6); therefore, he was not required to wear the hat unless it was sunny. (*Id*. ¶ 11). Plaintiff further alleges that on the morning of November 30, 2008, he attended the morning recreational yard without his long sleeve shirt and straw hat because the weather was cloudy, cool, windy, and approximately 65 degrees. (Id. ¶ 7). Plaintiff contends that as he returned from the morning yard, defendant Scarbrough was waiting for him in front of the dormitory and stated, "You're going to jail."[5] "You wanna be filing lawsuits on my partner!" Then asked plaintiff "Where's your hat?" (Id., ¶ 9). Scarborough then directed staff to take plaintiff to administrative confinement, and later issued the DR. Plaintiff

---

[3]There is no evidence plaintiff lost any good time credits.

[4]Prior to plaintiff receiving notice of the charge, plaintiff filed a "Grievance of Reprisal" on December 4, 2008, challenging his placement in administrative confinement on November 30, 2008, claiming defendant Scarborough placed him in confinement in retaliation for the lawsuit against Kent. (Doc. 69, Ex. H). However, plaintiff did not appeal the disciplinary conviction.

[5]"Going to jail" is a euphemism used in prison to refer to disciplinary confinement separate from the open population housing. *O'Bryant v. Finch*, 637 F.3d 1207, 1210 n.3 (11th Cir. 2011)

contends that both before and after the DR, Scarbrough saw plaintiff outside without his hat and never questioned plaintiff about it.

Defendant Scarbrough asserts that inmates with medical passes are required to adhere to the provisions of the pass at all times; that plaintiff's pass required him to wear a long-sleeved shirt and straw hat whenever he was outside during the daylight hours; that plaintiff was not obeying the pass as directed; that prior to writing plaintiff the DR Scarborough twice observed plaintiff outside without his hat and both times warned plaintiff that he needed to obey his medical pass; that on the morning in question plaintiff was not wearing his straw hat in the sunlight as required; and that before writing the DR Scarborough consulted with Nurse Powell. (Doc. 69, Ex. E, Scarborough Decl. ¶¶ 3-5; *see also* Ex. C, p. 14 (stating that "If [an inmate is] issued a medical pass, [the inmate] is required to adhere to the provision of the pass at all time. Failure to do so may result in the medical pass being revoked and/or disciplinary action being taken.").

Despite the factual disputes concerning Scarbrough's motive for issuing the DR, plaintiff's retaliation claim is foreclosed by *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). In *O'Bryant*, an inmate brought a civil rights action against individual prison officials, alleging that the officials fabricated facts underlying disciplinary reports to retaliate against him for filing earlier grievances against prison staff. *Id.* at 1212. The defendants argued that Inmate O'Bryant was found guilty of the disciplinary charges based on evidence and after a hearing in which O'Bryant was afforded procedural due process. As a result, the defendants contended that O'Bryant could not establish a retaliation claim when he had been found guilty of the actual conduct underlying the disciplinary reports and that conduct violated prison rules.

*Id.*, at 1213. O'Bryant responded that he was not afforded adequate due process and, in any event, he could still state a retaliation claim after adequate due process. *Id.*

The Eleventh Circuit reviewed Supreme Court decisions concerning due process in prison disciplinary proceedings, namely *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), and *Superintendent v. Hill*, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). In *Wolff*, the Supreme Court outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting. *Id*. at 556, 94 S. Ct. at 2975 ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."). As the Eleventh Circuit summarized:

> *Wolff* instructed that prisoners must receive: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id*. at 563–67, 94 S. Ct. at 2978–80.

*O'Bryant*, 637 F.3d at 1213. In regard to the third requirement, the Supreme Court in *Hill* held that due process merely requires that there be some evidence in the record that supports the decision of the disciplinary board. *Hill*, 472 U.S. at 455-56, 105 S. Ct. at 2774. The Supreme Court explained that "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id*. at 456, 105 S. Ct. at 2774. This is because "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a

conviction, nor any other standard greater than some evidence applies in this context." *Id.* (citations omitted).[6]

After setting forth the relevant principles, the Eleventh Circuit outlined the procedural history of Inmate O'Bryant's disciplinary proceedings, and concluded that the record demonstrated prison officials complied with the requirements of *Hill* and *Wolff*. *O'Bryant*, 637 F.3d at 1214-15. The court went on to hold: "[A]n inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process." *Id.* at 1215. The court explained:

> If a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report. Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. In the particular circumstances here, O'Bryant has suffered adverse action (here 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting in the disciplinary harm at issue, O'Bryant's retaliation claim fails.

*Id.* at 1215-16.

---

[6]The Eleventh Circuit in *O'Bryant* recognized that because O'Bryant received only disciplinary confinement and did not lose any good time credits, it could be argued that he did not lose a liberty interest that triggered procedural due process requirements under either *Wolff* or *Hill*. The court declined to address the liberty-interest question, noting that it was discussing only O'Bryant's retaliation claim and only whether O'Bryant's conviction after being afforded due process barred his retaliation claim for allegedly false disciplinary charges. The same is true here.

*Case No: 3:09cv88/WS/CJK*

Here, as in *O'Bryant*, the alleged retaliatory conduct is Scarborough's "unwarranted" disciplinary charge. Plaintiff does not assert he was not afforded adequate due process during the disciplinary proceeding. In fact, the record demonstrates that the hearing complied with due process standards. Plaintiff's guilty plea provides "some evidence" that plaintiff actually committed the charged infraction. Thus, even accepting plaintiff's version of the facts as true, he is not entitled to summary judgment because he cannot prevail on his retaliation claim as a matter of law. Defendant Scarbrough, on the other hand, is entitled to judgment as a matter of law.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's motion for summary judgment (doc. 61) be DENIED.

2. That defendants' motion for summary judgment (doc. 68) be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

   a. Defendants' motion be GRANTED as to plaintiff's First Amendment retaliation claim against defendant Kent involving the handling of plaintiff's legal property;

   b. Defendants' motion be GRANTED as to plaintiff's First Amendment retaliation claim against defendant Scarbrough involving the November 30, 2008 disciplinary report; and

   c. Defendants' motion be DENIED as to plaintiff's First Amendment retaliation claim against defendant Kent arising from Kent's alleged threatening statement(s) and gesture(s).

3. That plaintiff's First Amendment retaliation claim against defendant Kent involving Kent's alleged threats be remanded to the undersigned for further proceedings on that claim.

At Pensacola, Florida this 25th day of August, 2011.

*/s/ Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).